## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT PADUCAH

DOMINIQUE J. BROCK                                          PLAINTIFF

v.                                CIVIL ACTION NO. 5:15-CV-P225-TBR

WILLIAM LYNN *et al.*                                       DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This is a civil rights action brought by a convicted prisoner pursuant to 42 U.S.C. § 1983.

The Court has granted Plaintiff leave to proceed *in forma pauperis*. This matter is before the

Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601

(6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 594 U.S. 199 (2007). For the

reasons set forth below, Plaintiff's federal claims against all Defendants will be dismissed,

except for his Eighth Amendment "conditions-of-confinement" claim based upon allegations of a

rodent-bite and feces in his cell. With regard to this portion of his Eighth Amendment claim, the

Court will allow Plaintiff to amend his complaint.

### I. FACTS

Plaintiff is an inmate at Kentucky State Penitentiary (KSP). In his complaint, Plaintiff

alleges that he was wrongfully convicted of "kicking his cell door" and sentenced to 45 "good

time days forfeited." Plaintiff identifies fifteen individuals, all of whom are KSP officials or

employees, whom he believes violated his rights in this process.[1]

---

[1] Although Plaintiff only lists five Defendants in Section B of his complaint and indicates that he is suing those five individuals in both their individual and official capacities, he includes ten additional individuals in the body of his complaint and states that they are also Defendants in this action. Plaintiff did not specify whether he intended to sue these ten additional individuals in both their official and individual capacities; however, under the Sixth Circuit's "course of proceedings test," the Court finds that he did intend to sue them in both capacities. As set forth in *Moore v. City of Harriman*, the relevant concern is whether the course of proceedings has fairly provided a defendant with notice that he/she has been sued in his/her individual capacity. 272 F.3d 769, 772 (6th Cir. 2001). In making this

Plaintiff attached exhibits to his complaint which show how he was charged, investigated, and convicted of "kicking his cell door." The first disciplinary report form, which was completed by Defendant William J. Lynn, states that on October 23, 2014, Defendant Lynn witnessed Plaintiff beating on his cell door. It further states that Defendant Lynn gave Plaintiff an order to stop beating on his door but that Plaintiff continued to beat on his cell door. The disciplinary report indicates that the "Report Date and Time" was October 3, 2014. The disciplinary report shows that it was reviewed by Defendant Lynn's supervisor, Defendant Harlan R. Martin, and was assigned for investigation to Defendant Daniel R. Winsett. Defendant Winsett investigated the incident and found that the report had a typographical error concerning the date and that the incident actually happened on October 2, 2014. Defendant Winsett interviewed Officer Lynn who stated that he had given Plaintiff an order to stop banging on his door, but Plaintiff refused. Defendant Winsett then states that surveillance video also showed that Plaintiff was banging on his door. The investigative report was read to Plaintiff who denied that he was beating on the door. Ultimately, Plaintiff was charged with "nonviolent demonstration that could lead to disruption." *Id.*

Plaintiff had a hearing before the adjustment committee on November 12, 2014. He called three witness and they testified either that they did not know who was banging on the door or that they did not see or hear anything. Defendant Lynn and Defendant Winsett each testified to what was in their respective reports. The committee, which consisted of Defendants Tami N.

---

determination, the court considers: (1) the nature of the claims; (2) whether plaintiff seeks compensatory or punitive damages; (3) the nature of the defenses set forth in response to the complaint, specifically claims of qualified immunity; and (4) whether subsequent filings put defendant on notice of the capacity in which he is sued, subject to considerations of timing and fairness. *Id.* at 772 n. 1. Under the facts of the current case and assertions contained in Plaintiff's pleading, the Court finds Plaintiff intended to sue the ten additional Defendants in both their individual and official capacities.

Bauer, Travis M. Bradley, and Susan R. Knight, found Plaintiff guilty of the charge and affirmed his sentence of 45 "good time days forfeited."

Plaintiff appealed this decision to Defendant Warden Randy White on the grounds that he was inadequately charged with, convicted of, and sentenced to time for a "non-violent demonstration." In his appeal, he states that his rights were violated because the disciplinary report did not contain the correct date, his cell assignment was not mentioned in the incident report, Defendant Lynn incorrectly stated what cell Plaintiff occupied at the time of the incident, three witnesses testified that they did not hear anyone beating on the door, and Plaintiff requested that additional witnesses testify on his behalf, but they were never called. Defendant Warden White ordered a re-investigation of the incident on December 4, 2014.

On April 26, 2015, the original disciplinary report was re-written by Defendant Lynn. In the re-written report, Defendant Lynn clarified which cell Plaintiff had been in when he was banging on the door and that Defendant Lynn knew which cell the banging was coming from because he could see the lock bouncing on the tray flap of the cell as Plaintiff beat his door. Defendant Supervisor William B. Morrison then assigned the report for investigation to Defendant Winsett. Defendant Winsett re-investigated the report and again concluded that Plaintiff should be charged with "non-violent demonstration that could lead to disruption."

The documents submitted by Plaintiff also show that on April 2, 2015, Plaintiff was placed in administrative segregation pending a disciplinary report by Defendant Tim Hawkins and that on May 2, 2015, Plaintiff was again placed in administrative segregation pending a disciplinary report by Defendant Jay Jones.

Plaintiff had another hearing before an adjustment committee on May 15, 2015, which found him guilty of the charge and sentenced him to 45 days disciplinary segregation. The

adjustment committee members included Defendants Frederick D. Rodgers, Michael D. Spindler, and Ronald L. Smith.  Plaintiff again appealed to Defendant Warden White, but on May 21, 2015, Defendant White upheld the decision of the adjustment committee.

Plaintiff also states that Defendants Dan Smith and Rachell Hughes contributed to the violations against him by doing "nothing to assist [him]."

Finally, Plaintiff alleges that while he was in disciplinary segregation, he nearly "starved eating only 3 meals a day without reach of canteen . . . [and] missed out on job money witch could've been made via 'state pay.'  I was bitten by a rodent . . . and forced to eat breakfast, lunch, and dinner in a cell with human fecis on the floor . . ."

## II. SUMMARY OF CLAIMS

Based upon the above facts, Plaintiff brings claims against Defendants alleging violations of the First, Fifth, Eighth, and Fourteenth Amendments of the U.S Constitution.

He also brings claims for wrongful conviction, malicious prosecution, malice within the institution, conflict of interest, illegal detention, malpractice, "nonfeasance," failure to carry out fiduciary tasks, wrongful prosecution, wrongful investigation, negligent hiring and retention, and intentional infliction of emotional distress.  He also states that Defendants violated his rights under §§ 3, 14, and 17 of the Kentucky Constitution; Articles 3, 5, 7, 8, and 10 of the Kentucky General Assembly.

As relief, Plaintiff seeks monetary damages, punitive damages, and injunctive relief in the form of having his "good time" restored and each Defendant discharged from the "A.B.A."

## III. LEGAL STANDARD

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A.  Under

§ 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d at 608.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Id.* at 327.  In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true."  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).  "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  However, while liberal, this standard of review does require more than the bare assertion of legal conclusions.  *See Columbia Natural Res., Inc.* v. *Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).  The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff.  *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  To command otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its

legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## IV. ANALYSIS

### A.  42 U.S.C. § 1983

Section 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001).  Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  "A plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  Absent either element, a § 1983 claim will not lie. *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### 1.  Official-Capacity Claims

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 n.55 (1978)).  Because all of the Defendants are employees or officers of the Commonwealth of Kentucky, the claims brought against them in their official capacities are deemed claims against the Commonwealth of Kentucky. *See Kentucky v. Graham*, 473 U.S. at 166.  State officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Thus, because Plaintiff seeks money damages from state officers or employees in their official capacities, he fails to allege cognizable claims under § 1983.  Additionally, the Eleventh Amendment acts as a bar to claims for monetary

damages against these Defendants in their official capacities.  *Kentucky v. Graham*, 473 U.S. at 169.

Therefore, Plaintiff's official-capacity claims against all Defendants for monetary damages will be dismissed for failure to state a claim upon which relief can be granted and for seeking monetary relief from Defendants who are immune from such relief.  As more fully explained below, the official-capacity claims against Defendants for injunctive relief will also be dismissed because Plaintiff requests injunctive relief - restoration of "all good time" - which cannot be granted by the Court in this § 1983 action.[2]

### 2.  Individual-Capacity Claims

#### a.  Fourteenth Amendment

Plaintiff alleges that Defendants violated the Due Process Clause of the Fourteenth Amendment by participating in and finding him guilty in prison disciplinary proceedings which resulted in his placement in disciplinary segregation and loss of good-time credits.  In relation to his Fourteenth Amendment claim, Plaintiff also makes claims of "wrongful investigation," "wrongful prosecution," "wrongful conviction," and "illegal detention."  He specifically contends that Defendants prepared an inadequate disciplinary report, conducted an inadequate investigation, refused to let him call some of his witnesses, forced him to go before an adjustment committee three times for the same charge, failed to follow proper policies and procedures, and refused to overturn his conviction.

---

[2] As injunctive relief, Plaintiff also requests that the Court discharge each Defendant from the "A.B.A."    The Court construes this request for relief as a demand that the Court have each Defendant removed from the American Bar Association.  The Court has no reason to believe that any Defendant is a member of the American Bar Association; however, even if one of the Defendants were a member of this organization, the Court would have no authority to revoke any Defendant's membership in this organization.  To the extent that Plaintiff intends by this relief to seek that each Defendant be disbarred from practicing law, the Court has no authority to disbar any individual.  *See, e.g.*, *In re Baumgartner*, 123 F. App'x 200, 203 (6th Cir. 2005) (recognizing that the state has jurisdiction to disbar an attorney and that the state's power of disbarment cannot be upset by federal review).

To state a Fourteenth Amendment due process claim, an inmate must allege a deprivation of a liberty interest protected by the Due Process Clause.  To determine whether segregation of an inmate from the general prison population involves the deprivation of a protected liberty interest, the Court must determine if the segregation imposes an "atypical and significant" hardship on the inmate "in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 483 (1995).  Generally, no liberty interest in remaining free from disciplinary segregation will be found.  *Id.* at 484.  Therefore, Plaintiff's assignment to disciplinary segregation does not state a Due Process Clause violation.

However, it is also true that a restraint which "inevitably affect[s] the duration of [an inmate's] sentence" creates a liberty interest.  *Sandin v. Conner*, 515 U.S. at 487.  Here, Plaintiff alleges that he lost 45 "good time days" as a result of his conviction in a prison disciplinary proceeding.  Because the loss of earned good-time credits affects the length of Plaintiff's sentence, Plaintiff has a protected liberty interest in this regard.  *Id*. at 477-78 (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)).  This claim, however, is barred by the *Heck* doctrine.  In *Heck v. Humphrey*, the Supreme Court held that a state prisoner may not file a § 1983 suit for damages or equitable relief challenging his conviction or sentence, unless the challenged confinement has been remedied by some other process, if a ruling on his claim would render the conviction or sentence invalid.  512 U.S. 477, 486-87 (1994).  In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court extended the application of *Heck* to prison disciplinary proceedings.  The court held that if an inmate's allegations would "necessarily imply the invalidity of the punishment imposed," the claim is not cognizable in a civil action under § 1983.  *Id.* at 648.  Furthermore, in *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the Supreme Court re-emphasized that "a state prisoner's § 1983 action is barred (absent prior invalidation)--no matter the relief sought

(damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)--if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id*. at 81-82.  In the instant action, Plaintiff seeks "restoration of all good time."  Because success on Plaintiff's claims concerning his prison disciplinary conviction would necessarily imply the invalidity of his confinement, they cannot be brought in a § 1983 action.

Accordingly, Plaintiff's claims against Defendants concerning his prison disciplinary proceedings and conviction, including his due process claims under the Fourteenth Amendment will be dismissed for failure to state a claim upon which relief may be granted.

### b.  First Amendment

In the sections of his complaint entitled "malicious prosecution," "malice within the institution," and "conflict of interest," Plaintiff suggests that there may be a connection between Defendants' actions against him and the fact that he filed a lawsuit against a jailer who was the former warden of KSP and other KSP employees.  Regarding his first "malicious prosecution" claim, Plaintiff alleges that Defendants Martin and Winsett both "voiced their opinions with me . . . about my feud with Phillip Parker at Crittenden Co. Jail."  He states that Defendant Martin told me that "he and Phillip Parker" were good friends and that Plaintiff had "one time with him."  He also states that Defendant Winsett told him that "he and Parker were good friends, and that he felt Parker's tasing me was right."  Plaintiff further states that both Defendants Martin and Winsett are defendants in another lawsuit he has filed.

In his second "malicious prosecution" claim, Plaintiff also states that he believes Defendant Murphy and Defendant Jones' "detention" of him was in retaliation for his filing of a

lawsuit against Parker since both had "voiced their opinions with [him] on previous occasions informing [him] that they disagreed with [his] filing a '1983' on Parker."

In his "malice within the institution" claim, Plaintiff states that because of his lawsuit against Parker and Defendants Martin and Winsett, he believes he was deprived of a fair investigation by Defendants Lynn, Martin, and Winsett, and of a fair hearing by Defendants Bauer, Bradley, and Knight.  In this section, Plaintiff points out that Phillip Parker "was at one point in time Warden of KSP, making him the former employer of a majority of the defendants" and that Defendants Martin and Winsett are the co-workers of the other Defendants.

The Court construes these allegations as claims of retaliation in violation of Plaintiff's First Amendment rights.  The Sixth Circuit has held that prisoners are precluded from collaterally attacking prison misconduct hearings or underlying disciplinary convictions by alleging retaliation under 42 U.S.C § 1983.  *See Huey v. Stine*, 230 F.3d 226, 230-31 (6th Cir. 2000); *see also Lewis v. Pendell*, 90 F. App'x 882, 883 (6th Cir. 2004) (holding that a § 1983 was not cognizable because a favorable ruling on the plaintiff's retaliation claim would imply the invalidity of his disciplinary conviction); *Denham v. Shroad*, 56 F. App'x 692, 693 (6th Cir. 2003) ("Because a favorable ruling on Denham's Eighth Amendment claim [alleging excessive use of force by prison officials] would imply the invalidity of his disciplinary conviction, this claim is not cognizable."); *Norwood v. Mich. Dep't of Corr.*, 67 F. App'x 286, 288 (6th Cir. 2003) ("Norwood cannot evade *Heck*'s bar on § 1983 challenges . . . by labeling his cause of action a retaliation claim"); *Ruiz v. Bouchard*, 60 F. App'x 572, 574 (6th Cir. 2003) (claim of retaliatory filing of misconduct is barred by the prisoner's conviction on the misconduct charge); *Anthony v. Ranger*, No. 08-CV-11436-DT, 2010 U.S. Dist. LEXIS 30483 (E.D. Mich. Mar. 30,

2010) (dismissing a retaliation claim against an officer who filed a misconduct charge because it was barred under the habeas exception to § 1983).

Here, Plaintiff alleges that as a result of Defendants' retaliatory actions, he was convicted of an offense which resulted in the loss of 45 "good-time days" and 45 days in disciplinary segregation.  Because Plaintiff alleges that his conviction resulted in the loss of good-time days, the Court concludes that the *Heck* doctrine bars Plaintiff's retaliation claims since a finding in his favor on these claims would imply the invalidity of his conviction and, therefore, impact the duration of his sentence.  *LaFountain v. Harry*, 716 F.3d 944, 950 (6th Cir. 2013).

Accordingly, Plaintiff's First Amendment retaliation claims will be dismissed for failure to state a claim upon which relief may be granted.

### c. Fifth Amendment

It also appears that Plaintiff claims Defendants violated the Double Jeopardy Clause of the Fifth Amendment.  However, the Sixth Circuit has found administrative prison sanctions to be civil in nature, noting that "[t]he Double Jeopardy Clause was not intended to inhibit prison discipline."  *United States v. Simpson*, 546 F.3d 394, 398 (6th Cir. 2009); s*ee also Odom v. Smith*, No. 1:08-cv-1181, 2009 U.S. Dist. LEXIS 3606, at *6 (W.D. Mich. Jan. 16, 2009) (finding prisoner failed to state double jeopardy claim based on prison officials' decision to confiscate his property because the taking of prisoner property is administrative in nature and the Double Jeopardy Clause does not apply to administrative proceedings); *Argue v. Berghuis*, 2006 U.S. Dist. LEXIS 5584, at *6 (W.D. Mich. Feb. 1, 2006) (finding prisoner failed to state double jeopardy claim because grievance proceedings conducted by state prison authorities are administrative in nature and, thus, not subject to the Double Jeopardy Clause).

For this reason, the Court will dismiss Plaintiff's Fifth Amendment claim for failure to state a claim upon which relief may be granted.

### d.  Eighth Amendment

Plaintiff also claims that Defendants violated his Eighth Amendment rights.  The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment's protections are limited to "deprivations of essential food, medical care, or sanitation [or] other conditions intolerable for prison confinement." *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981).  "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).  In addition, a violation of the Eighth Amendment's prohibition against cruel and unusual punishment requires a showing of two elements - one objective, one subjective.  *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).  First, the alleged deprivation must be, objectively, "sufficiently serious," *i.e.*, the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.*  Second, the official must have been "deliberately indifferent" to the inmate's health or safety. *Id.*

As set forth above, Plaintiff states that he nearly "starved eating only 3 meals a day without reach of canteen . . . [and] missed out on job money witch could've been made via 'state pay.'"  The Court finds that these allegations do not rise to the level of stating a constitutional violation.  With regard to Plaintiff's allegations about the number of meals he received, the Eighth Amendment only requires that prisoners be served sufficient food to maintain normal health.  *Cunningham v. Jones*, 567 F.2d 653, 660 (6th Cir. 1977).  Here, Plaintiff states that he received three meals a day and does not allege that he lost weight or suffered any negative health

effects from his prison diet.  Thus, Plaintiff has failed to state a claim for malnutrition under the

Eighth Amendment.  *See, e.g.*, *LaPlante v. Lovelace*, No. 2:13-CV-32, 2013 U.S. Dist. LEXIS

145870 at *22-25 (W.D. Mich. 2013); *Mummery v. Montgomery Cnty. Jail*, No. 3:12-0115, 2012

U.S. Dist. LEXIS 170385 at *14-16 (M.D. Tenn. 2012).  Likewise, courts have generally held

that the denial of privileges while in segregation, such as the inability to work or receive pay, do

not rise to the level of an Eighth Amendment violation.  *See, e.g., Thomas v. Ramos*, 130 F.3d

754 (7th Cir. 1997).

However, Plaintiff also alleges that "[he] was bitten by a rodent . . . and forced to eat

breakfast, lunch, and dinner in a cell with human fecis on the floor . . . ."  With regard to these

allegations, the Court finds that Plaintiff may have met the objective component of an Eighth

Amendment claim.  However, because Plaintiff failed to allege which KSP official(s) knew of

these conditions and disregarded them, he has failed to state a claim under the Eighth

Amendment.  *See*, *e.g.*, *Taylor v. Larson,* 505 F. App'x 475, 477 (6th Cir. 2012)*.*  "A prison

official cannot be held liable under the Eighth Amendment for denying an inmate humane

conditions of confinement unless the official knows of and disregards an excessive risk to inmate

health or safety; the official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Farmer v. Brennan*, 511 U.S. at 837.

Thus, the Court will allow Plaintiff to amend his complaint to name the KSP officials, if

any, who knew about his rodent-bite and the feces in his cell and disregarded them.  The Court

will also allow Plaintiff to amend his complaint to provide more specific allegations regarding

both his rodent-bite, and any injury he may have suffered from such, and the feces in his cell,

such as how long and how often Plaintiff was exposed to such.[3]

### B. Kentucky Constitutional and Other State-Law Claims

In his complaint, Plaintiff also alleges various state-law claims.  Since the Court is allowing

Plaintiff the opportunity to amend his complaint regarding one portion of his Eighth Amendment

"conditions-of-confinement" claim, the Court will defer resolving whether it has and will

exercise supplemental jurisdiction over Plaintiff's state-law claims until it performs an initial

review of Plaintiff's amended complaint.

### VI. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED t**hat Plaintiff's federal claims

are dismissed against all Defendants, except his Eighth Amendment "conditions-of-confinement"

claim to the extent that it is based upon allegations of a rodent-bite and human feces in his cell.

**IT IF FURTHER ORDERED** that within **30 days** from entry of this Memorandum

Opinion and Order, Plaintiff may amend his complaint to 1) identify the KSP officials, if any,

who knew about the conditions of his confinement, specifically his rodent-bite and the feces in

his cell, and failed to act; 2) name these individuals as Defendants and sue them in their

individual capacity; and 3) clarify his allegations regarding his rodent-bite and the feces in his

cell, and specifically state how long and how often he was exposed to feces in cell.

The Clerk of Court is **DIRECTED** to write the instant case number and "Amended" on a

§ 1983 complaint form and send it, along with two blank summons forms, to Plaintiff for his

completion should he choose to file an amended complaint.

---

[3] "[U]nder Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA [Prison Litigation Reform Act]."  *LaFountain v. Harry*, 716 F.3d at 951 (6th Cir. 2013).

**Plaintiff is warned that if he fails to file an amended complaint within the allotted time, the action will be dismissed in its entirety.**

Date:

cc:  Plaintiff, *pro se*
     Defendants
     Kentucky Justice and Public Safety Cabinet
4413.011